Argued and submitted September 12,
reversed and remanded November 10,
reconsideration denied December 17, 1980,
petition for review denied February 24, 1981 (290 Or 519)

**LOCKARD,**
*Appellant,*

*v.*

**THE MURPHY COMPANY,**
*Respondent.*

(No. 78-4148, CA 16347)

619 P2d 283

J. P. Graff, Eugene, argued the cause for appellant. On the brief were Jack Polance and Larry L. Gildea, P.C., Eugene.

David Graham Novick, Eugene, argued the cause for respondent. On the brief were John E. Jaqua and Jaqua & Wheatley, P.C., Eugene.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a personal injury action. The issue before this court is whether, under the terms of the Workers' Compensation Law, the plaintiff is an employe of defendant and thus barred from maintaining this action, ORS 656.018,[1] or whether he is an independent contractor. Alternatively to his contention that he is an independent contractor, plaintiff contends that he is a sole proprietor and thus excluded from coverage under the act, ORS 656.027(7).[2] The trial court, on cross-motions for summary judgment, found that the plaintiff was an employe and entered summary judgment for the defendant. We reverse and remand for trial.

Defendant Murphy Company produces veneer at mills located in various places in Oregon. It also operates drying facilities for the veneer. The defendant engages truck drivers to take the veneer from its mills to its drying facilities and to purchasers of the veneer. Plaintiff was one such hauler. On March 2, 1978, the plaintiff went to defendant's mill at Florence to pick up and deliver a load of veneer to one of defendant's purchasers in Medford. As the veneer was being loaded onto plaintiff's truck by defendant's employe, plaintiff was struck by a forklift driven by the employe. This action is based on injuries plaintiff sustained as a result of that accident.

A "worker" is defined by the Workers' Compensation law as:

---

[1] ORS 656.018(1)(a) provides:

"(1) (a) The liability of every employer who satisfies the duty required by subsection (1) of ORS 656.017 is exclusive and in place of all other liability arising out of compensable injuries to his subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such injuries, except as specifically provided otherwise in ORS 656.001 to 656.794.

[2] ORS 656.027(7) provides:

"All workers are subject to ORS 656.001 to 656.794 (the workers' compensation statute) except those non-subject workers described in the following subsections:

"* * * * *

"(7) Sole proprietors, partners and officers of corporations."

"* * * any person, including a minor whether lawfully or unlawfully employed, who engages to furnish services for a remuneration, subject to the direction and control of an employer * * *." ORS 656.005(31).

An employer is

"Any person * * * who contracts to pay a remuneration for and secures the right to direct and control the services of any person." ORS 656.005(16).

Under this statute, control is an essential ingredient in the test for determining who is a "worker" within the meaning of the Workers' Compensation Act. *Woody v. Waibel,* 276 Or 189, 196, 554 P2d 492 (1976); *Bowser v. State Indus. Accident Comm.,* 182 Or 42, 185 P2d 891 (1947). The critical inquiry is whether the right of control exists and not whether the control is actually exercised. *Collins v. Anderson,* 40 Or App 765, 769, 596 P2d 1001 (1979). The principal factors demonstrating right of control are (1) direct evidence of right or exercise of control; (2) method of payment; (3) the furnishing of equipment; and (4) the right to fire. *Carlile v. Greeninger,* 35 Or App 51, 54, 580 P2d 588 (1978) *rev den,* 283 Or 235 (1978); *see also, Bowser v. State Indus. Accident Comm., supra,* 182 Or 42; 1C Larson, Workmen's Compensation Law, § 44 (1980).

With these factors in mind, we turn to an examination of the facts before us, for which we rely on the parties' stipulation before the trial court as supplemented by our own reading of plaintiff's affidavits. [3]

In January, 1978, the plaintiff, Calvin Lockard, purchased a tractor and flatbed trailer for the purpose of starting a lumber hauling business of his own. It was his intention to carry all types of lumber products. Plaintiff adopted the assumed business name of CPH Transport and registered as such with the Corporation Commissioner. He applied for and received his PUC plates (motor carrier permit) and was given operating authority to transport lumber products, cord wood, fish scrap and newspaper. Plaintiff purchased his own liability and cargo insurance. He also purchased a disability insurance policy and his own

---

[3] The defendant having failed to controvert any of the affidavits submitted on plaintiff's behalf, we take them as true. *See Eugene TV v. Flinn,* 43 Or App 837, 604 P2d 437 (1979).

medical insurance. Plaintiff applied for and received an employer identification number from the Internal Revenue Service.

An accountant, engaged by plaintiff, set up the books for his new business. Thereafter, the books were maintained by plaintiff's wife. A checking account, separate from plaintiff's personal account, was established for CPH Transport. Plaintiff planned to draw a regular salary from the business and received one such check before his accident. Plaintiff and his wife filed a joint income tax return for 1978 which included a schedule C form reporting separately the income and expenses of his business, identified as CPH Transport on the return.

The defendant engaged the plaintiff to transport veneer for it on a number of occasions between the time plaintiff began hauling in late January, 1978, and the time of the accident. Plaintiff would call the defendant to find out if loads were available to haul. Sometimes the defendant would contact the plaintiff first. There was no long term contract between the parties and the defendant was under no obligation to continue providing the plaintiff with work. Each work agreement was for a specific load only. The plaintiff was paid on a per load basis at a price agreed upon between the parties. Plaintiff refused to haul loads when he thought the price was insufficient.

The defendant would tell the plaintiff where to pick up the load and where it was to be delivered. When the plaintiff arrived at one of defendant's mills, he was told where to park his truck. One of defendant's employes would then load the veneer. Plaintiff would supervise the loading of his truck and instruct defendant's employe on where to place the bundles of veneer. He could control the amount of weight placed on his truck and, on those occasions when the load exceeded his legal limits, he asked the loader to remove some of the bundles. Plaintiff was free to hire assistants to help him in his business at any time without defendant's consent or approval. Plaintiff was responsible for any overload tickets he might receive. He also paid all the costs necesary to the maintenance of his equipment.

When the plaintiff hauled loads between the defendant's own mills or their drying facility, he would be

paid directly by the defendant. The amount paid to plaintiff was treated by the defendant as a hauling expense and not a payroll expense. The defendant did not make payroll deductions from this amount, nor pay unemployment insurance tax on plaintiff's behalf, nor carry workers' compensation insurance for him. The plaintiff did not receive vacation, medical or any other type of employe benefits from the defendant.

The defendant also used other people, driving its own trucks, to deliver and transport veneer. These persons were paid on an hourly basis and the usual payroll deductions were taken from their checks. Contribution to workers' compensation insurance was paid on their behalf. When these truckers hauled veneer, the price charged defendant's purchasers included transportation costs.

Besides CPH Transport, the defendant engaged other transport companies to transport its veneer. Payment to these companies were treated as hauling expenses in the same manner as payments to plaintiff.

The plaintiff hauled wood products for various other companies. No one company could supply him with sufficient business. However, between the time he began working on his own and the time of his accident, three-fourths of plaintiff's income was derived from loads originating at defendant's mills.

From the foregoing, it is apparent that the defendant had the right to control the plaintiff's performance in some respects but not others. Evidence supporting an employment relationship exists in the following:

1. Either party had the right to terminate their relationship at any time without liability;

2. The defendant designated the pickup and destination point for the loads plaintiff was to carry; and

3. The loader was an employe and under the direction of the defendant in loading the truck.

Circumstances that support the conclusion that the plaintiff was an independent contractor are:

1. Plaintiff was paid on the basis of the amount of lumber hauled rather than an established wage;

2. Plaintiff furnished and maintained his own equipment.

3. Plaintiff had a right to object to and have improper loading corrected and, after his truck was loaded, he had the entire responsibility, including the choice of route, for making the delivery to the set destination;

4. Plaintiff could hire assistants and work for others.

The facts before us are substantially the same as those in the cases of *Woody v. Waibel, supra,* 276 Or at 191 n n 1, 2, and *Louvring v. Excel Logging Co.,* 280 Or 463, 465, 466, 573 P2d 266 (1977).[4] In those cases, the court found that

> "* * *[T]he issue of control was evenly enough balanced that the traditional statutory control test was insufficient with which [sic] to make a determination." *Louvring v. Excel Logging Co., supra,* 280 Or at 466; *Woody v. Waibel, supra,* 276 Or at 197.

There are also factual differences, which we discuss below, between this case and *Woody* and *Louvring.* However, we conclude that those differences do not tip the scales on the issue of control one way or the other.

In *Woody,* the court held that where the right to control test is insufficient to define the relationship in question, it is then permissible to turn to the purposes of the Workers' Compensation Law to determine if the control retained by the defendant makes the plaintiff an employe. *Woody v. Waibel, supra,* 276 Or at 197; *see also Louvring v. Excel Logging Co., supra,* 280 Or at 466. This calls for an application of "the relative nature of the work test." Larson describes the basis of that test:

---

[4] In both *Woody v. Waibel, supra,* and *Louvring v. Excel Logging Co.,supra,* the plaintiff was a trucker who was engaged by the defendant to haul logs. In both cases, the plaintiff owned his own truck, worked for others besides the defendant and could hire assistants. Both plaintiffs maintained their own insurance and PUC license. Neither plaintiff was treated as an employe by the defendant for purposes of employe benefits or payroll deductions. In both cases, the defendant specified the pickup and destination points and an employe of defendant loaded the truck. However, the plaintiff could object to improper loading and had entire responsibility for delivering once being loaded. The plaintiff in *Louvring* was hired on a per load basis while the plaintiff in *Woody* had a continuing arrangement with the defendant and was paid every two weeks.

"The theory of compensation legislation is that the cost of all industrial accidents should be borne by the consumer as a part of the cost of the product. It follows that any worker whose services form a regular and continuing part of the cost of that product, and whose method of operation is not such an independent business that it forms in itself a separate route through which his own costs of industrial accident can be channelled, is within the presumptive area of intended protection." lC Larson, Workmen's Compensation Law, § 43.51 (1980).

The factors to be considered are:

"* * *[T]he character of the claimant's work or business—how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on—and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job." lC Larson Workmen's Compensation Law § 43.52, (1980); quoted with approval in *Woody v. Waibel, supra,* 276 Or at 195.

■       Applying these factors to the case before us, we conclude that the plaintiff is not an employe for purposes of the Workers' Compensation Law. It is clear that the plaintiff operated a business separate from the defendant. The plaintiff established an independent business with an assumed business name, an accounting system and a separate bank account. He filed a statement of the business's financial situation with his federal income tax and planned to draw a salary from the business's profits. The plaintiff also had an IRS employer identification number. None of these factors existed in either *Woody* or *Louvring,* where the court found the plaintiffs to be "workers."

We note further that, while transporting veneer was a regular part of the defendant's business, there was no continuing relationship between the parties. The plaintiff was hired on a per load basis, and he often initiated the "employment" with the defendant. In *Woody,* the fact that the plaintiff worked for the defendant on a continuing basis was a significant factor in the court's determining

that the plaintiff was an employe. *Woody v. Waibel, supra,* 276 Or at 198.[5]

It is true that, like the defendants in *Woody* and *Louvring,* the defendant in the present case can more effectively distribute the cost of injuries to plaintiff resulting from the hazards of hauling wood products. However, we conclude that the facts demonstrating the existence of plaintiff's separate business sufficiently override this consideration.

The order of the trial court is reversed and the case is remanded for trial on plaintiff's personal injury claim.[6]

Reversed and remanded.

---

[5] In *Louvring v. Excel Logging Co., supra,* the plaintiff was found to be an employe for purposes of the Workers' Compensation Law even though he was hired on a per load basis. The court in *Louvring* did not discuss this fact but simply concluded that, because of the similarities between the two cases, *Woody v. Waibel, supra,* was controlling. Because of the other significant differences between this case and *Woody* and *Louvring,* it is not necessary for us to decide if lack of a continuous relationship alone would preclude a finding that the plaintiff here was a "worker" for purposes of the Workers' Compensation Law.

[6] Because we conclude that the plaintiff is not a "worker" within the meaning of the Workers' Compensation Law, we are not required to decide if he is a "sole proprietor" as that term is used in ORA 656.027(7).