Argued December 17, 1976, affirmed February 8, 1977

MILLER, *Appellant,*
*v.*
GRANITE CONSTRUCTION CO. et al,
*Respondents.*
(No. 76-06-08501, CA 6894)

559 P2d 944

Douglas D. Hagen, Portland, argued the cause for appellant. With him on the briefs were Kafoury & Hagen, Portland.

Daryll E. Klein, Portland, argued the cause for respondents. With him on the brief were Jones, Lang, Klein, Wolf & Smith, Portland.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

FORT, J.

## FORT, J.

In this workmen's compensation case, claimant appeals from an order of the circuit court affirming a determination by the Workmen's Compensation Board entered upon the recommendation of a hearing referee that claimant's low back injuries were not compensable.

Claimant, then aged 57, was injured on July 3, 1974, while attempting to remove some bolts from a tractor. One of the bolts broke as he was attempting to loosen it, and claimant fell backward against the tractor and lost consciousness. Claimant took leave from work and first visited a Dr. Myers on July 8, 1974, and again in October 1974. At each visit, claimant complained of pains in his right arm and neck; he made no mention of any injury to, or pain in, his lower back.[1] During this period, on October 24, 1974, claimant also visited another doctor, complaining only of the cervical area and neck pain, but again he made no mention of low back pains.

Claimant returned to work on July 22, 1974, and continued work until he was laid off on November 7, 1974. He was laid off only because the job he was hired to work on was completed. During this period claimant's supervisor, who saw claimant every day, noticed no symptoms of low back problems by claimant, and claimant made no complaints to his employer of any low back problem.

On November 15, 1974, claimant first reported low back pains to Dr. Myers and ultimately, in January 1975, was hospitalized with a diagnosis of "[a]cute low back pain with right femoral and sciatic pain, due to low back strain." Claimant then instituted these proceedings seeking compensation for the low back injury. There is no issue here concerning any other injuries sustained in the July 3, 1974, incident.

---

[1] The employer does not contend that the claimant's neck and shoulder injuries were not caused by the accident; the record does not reveal whether claimant has received compensation for these injuries.

The sole issue in this case is whether claimant's low back injury was caused by the July 3 accident. The only medical evidence as to causation was provided by diagnostic letters written by Dr. Myers. On October 7, 1975, Dr. Myers wrote:

"It is my presumption that [the lower back pain] does relate to the injury, but this is a problem which could be debated since the accident occurred in July, and I saw him in October at which time he was relatively free of pain. I saw him again in November with a low back pain which radiated into his leg. This required hospitalization and rather extensive treatment. His response was quite inadequate. The timing of this makes it somewhat quizzical. It was my feeling that it probably did relate to the accident."

We perceive the determinant factor in this case, as did the referee and the Board, to be the credibility of claimant. Dr. Myers' conclusions are valid as to the matter of causation only to the extent that the underlying basis of those opinions, the reports of claimant as to the circumstances of the accident and the extent of the resulting injury, are accurate and truthful. Several factors led the referee, Board and circuit court to conclude that claimant's credibility in recounting the origin of his low back injury is much in doubt. Claimant maintains that he reported the low back injury to Dr. Myers in July 1974, but Dr. Myers' reports indicate that it was not until November, and a week after he had been laid off work, that claimant first spoke to him about the low back injury. Further, in light of the claimed severity of claimant's symptoms, it is unlikely he would fail to mention the injury when being examined by his physician or that he would not exhibit any symptoms or complaints of low back injury during the four months he worked after the accident. The referee concluded such "low back pain is impossible to ignore and difficult to conceal."

Claimant testified in October 1975 at the hearing before the referee that he was unable to lift heavy objects, and he walked with a pronounced limp when attending the hearing. However, he was observed by

an investigator, also in October 1975, and prior to the hearing, lifting a cabinet and unloading bales of hay from a pickup truck at his own home and walking about his property without any limp. A motion picture taken of his movements at that time fully supports that testimony. In addition, while great detail is not here necessary, several incidents unrelated to the low back injury recounted by claimant but otherwise totally unsupported by the evidence, raise grave doubt concerning his credibility.

■ In a case such as this where the credibility of a witness is at issue, we must and do give great weight to the observations of the referee who had the advantage of seeing and hearing claimant. *Fredrickson v. Grandma Cookie Co.,* 13 Or App 334, 337-38, 509 P2d 1213 (1973); *Etchison v. SAIF,* 8 Or App 395, 494 P2d 455 (1972); *Bailey v. Morrison-Knudsen,* 5 Or App 592, 597, 485 P2d 1254 (1971). Here the referee concluded that claimant was not a believable witness.[2]

[2]The referee's opinion provided in pertinent part:

"It is the opinion of the Referee claimant's low back symptoms were not caused by his compensable injury. First, it is significant that claimant did not report any low back symptoms until November 15, 1974, more than four months after the compensable injury, although he saw his physician several times, both before and after returning to work. Second, claimant testified that when the bolt broke he was flung backward, striking his back on an angle iron flange which caused a bruise in the center of the back at the belt line. There is every reason to believe that if claimant had such a bruise it would have been noted by Dr. Myers on July 8, 1974, and if such a bruise were present Dr. Myers' opinion as to causation would probably be unequivocal. Third, when claimant was hospitalized on January 2, 1975 his symptoms were so severe it was necessary to use a wheel chair to get him into the hospital. In the normal course injuries tend to heal. Here, claimant contends his low back symptoms became progressively worse from July 3, 1974 until he finally had to be wheeled into the hospital in January, 1975. In view of the fact claimant worked from July 22, 1974 to November 7, 1974, and was not working when he first reported low back symptoms, the course of nature would have to be reversed in order to support claimant's contention. Fourth, the parties stipulated claimant's supervisor from July 22, 1974 to November 7, 1974 who saw claimant daily but not continuously, if called as a witness would testify he neither saw nor heard claimant complain of any low back problem during this period of time. Claimant stated his neck, shoulder and right arm symptoms were so severe he did not notice his low back symptoms

█ Where the medical evidence, and indeed claimant's whole case, rest on the thoroughly impeached credibility of claimant, we conclude that the claimant has not sustained his burden of proof. Accordingly, we reach the same conclusion as did the referee, Board and circuit court.

Affirmed.

until the more upper symptoms receded. It is the opinion of the Referee significant low back pain is impossible to ignore and difficult to conceal. Therefore the Referee cannot accept claimant's explanation. I therefore find claimant's low back symptoms were not caused by the compensable injury on July 3, 1974."